FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 OCT 14 PM 1: 28

U.S. DISTRICT COURT
N.D. OF ALABAMA

RODNEY VINCENT et. al,          }
                                }
     Plaintiffs                 }
                                }          CIVIL ACTION NO.
     vs.                        }
                                }          96-AR-2437-S
THE CROSBY GROUP, INC.          }
                                }
     Defendant                  }

*Cleo*


ENTERED

**MEMORANDUM OPINION**          |OCT 1 4 1997|

     In the present action, plaintiffs, Rodney Vincent and

Christi Vincent ("Vincents" or "Rodney" or "Christi"), seek

damages in tort from defendant, The Crosby Group, Inc.

("Crosby"), manufacturer of a screw type shackle used to attach

heavy items to cranes for lifting.  Brasfield & Gorrie General

Contractors, Inc. ("BGGC") and its insurance company, Travelers

Property Casualty Corporation, have intervened on plaintiffs'

behalf.[1]  There are several motions now before this court.


     Crosby first seeks to preclude the proposed testimony of

BGGC's expert witness, Gene Litwin ("Litwin"), because the

testimony purportedly was neither submitted in compliance with

Federal Rule of Civil Procedure 26(a)(2)(B), nor in compliance

---

     [1] Hereinafter, the court will refer to plaintiffs and intervenors
collectively as "Vincents," except where otherwise necessary for the sake of
clarity.

6

with scheduling order deadlines.  In response, Vincents ask that this court admit the expert testimony.

Crosby also seeks summary judgment and asks this court to strike certain affidavits submitted by BGGC in support of its objection to Crosby's summary judgment motion.

For reasons spelled out below, this court holds that Vincents' expert witness testimony should not be excluded pursuant to Federal Rules of Civil Procedure 26(a)(2)(B), 25(e) and 37(c)(1).  This court also holds that the challenged affidavit testimony need not be considered in order to reach a decision on Crosby's summary judgment motion.  There is enough evidence elsewhere in the record to create genuine issues of material fact.  Therefore Crosby's summary judgment motion will be denied and its motion to strike becomes moot for purposes of summary judgment consideration.

## I. Facts

On May 13, 1996, while employed as a construction worker for intervenor, BGGC, Rodney was injured after a large compressor fell on him.  The compressor fell while being hoisted by a crane.  As a result of that same accident, Gusta Cook ("Cook"), another

2

BGGC employee, was killed.[2]

Vincents allege that the accident occurred because the shackle used to attach the compressor to the crane was defective and that the manufacturer failed to adequately warn potential purchasers and users of the defect.  They also allege that the shackle involved in this accident was manufactured by Crosby. Vincent seeks damages from Crosby under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD").  Christi, the spouse of Rodney, seeks damages for loss of consortium.

On May 13, 1996, the day before the accident, John Bender ("Bender"), a BGGC employee rigged an air compressor in preparation for lifting.  At that time, he noticed that the compressor had a gray shackle attached and that the shackle appeared to be secure.  However, he was unsure what portion of the shackle was gray.  After Bender prepared the compressor, he observed Rodney climb up on the compressor and attach it to a crane.  Rodney then visually and manually checked the attachment. The compressor was then moved without incident.  BGGC policy requires that shackles remain permanently affixed to compressors at all times.  However, the shackles are sometimes removed and

---

[2] For purposes of discovery only, Cook's lawsuit has been consolidated with the present action.

used on other equipment, in violation of this policy.

On the following day, Rodney climbed on the compressor in order to reattach it to the crane for hoisting. He then pulled on the attachment apparatus and dismounted the compressor. Although Rodney admits he was responsible for making sure the load was secure, there is no evidence that he or any other employee, visually checked the shackle to ensure that it was secure.[3] Occupational Safety and Health Administration ("OSHA") regulations require that an inspection occur daily prior to such lifts. Further, BGGC policy requires a daily visual inspection prior to such lifts. However, several employee deponents testified that they do not visually inspect the shackles prior to each lift.

After dismounting the compressor, Rodney gave the signal for the crane operator to begin the lift. He then began to walk away, but stepped back a few steps in response to a comment made by Cook. When the compressor was approximately fifteen to twenty feet off the ground it fell on Rodney and Cook, even though neither man was standing directly beneath the compressor during the lift. *Whitlock* Depo. at 20; Stockdale *Depo.* at 20 - 25.

---

[3] Rodney is suffering from memory loss and cannot recall what happened on the day of the accident.

4

Later that day, BGGC organized a team to investigate the
cause of the accident.  During the investigation, the team found
a silver Crosby screw pin shackle lying near the area where the
accident had occurred.  The shackle did not contain a screw pin.
Inside the compressor that had fallen on the men the team then
found a red screw pin.  The investigators were able to insert the
screw pin into the shackle they had found near the scene of the
accident.  Tim Smalls ("Smalls"), the construction site
superintendent, testified that from time to time a shackle might
be found lying on the ground but that most of the time these
shackles contained the screw pin.  Smalls also testified that
there were approximately thirty to forty shackles used at the
construction site, but he believed that all of the shackles were
manufactured by Crosby.

Both plaintiffs' and intervenors' experts are of the opinion
that, on the day of the accident, the screw pin may not have been
in place when the lift began.  Indeed BGGC's expert, Litwin,
believes that the pin probably was not in place on that date.  He
opines that the screw type shackle is "vulnerable to backing out"
when vibrated.  In other words, the screw pin can work its way
out of the shackle if subjected to vibration.  Thus the lifting
of the compressor, on the day before the accident, could have
caused the screw to completely back out of the shackle, says

5

Litwin.

This alleged defect is widely known by shackle manufacturers, claims Litwin.  In his report, he quotes the warnings supplied by a different manufacturer in conjunction with the sale of its screw type shackles.  However, Crosby does not warn potential users and purchasers of the alleged defect in its products manual, its shackle shipments, or on the shackle itself. Litwin also reports that there is an alternative design, the "safety shackle," which does not contain the alleged defect. Crosby also manufactures a "safety shackle."  While Rodney testified that he had tightened a screw pin on a shackle in the past, there is no evidence that he was aware of the alleged "backing out" problem.

Plaintiffs' expert, Melville McCarthy ("McCarthy"), believes that there is no manufacturing defect in the shackle.  Instead, he finds fault with Crosby's failure to warn customers and purchasers about using the screw shackle for the types of lifts involved in the present case.  He believes that a "safety bolt shackle" should be used for "hazardous applications" such as the one involved in this case. *McCarthy Depo.* at 110 - 11, 152. Finally, McCarthy testified that he "thought" he had been told by Smalls, the construction site superintendent, that Smalls had

6

been aware that the screw pin could become unscrewed.

## II. Motion to Exclude Expert Testimony

Crosby's motion to exclude portions of Litwin's proposed testimony is based upon the following additional facts. On January 11, 1997, BGGC's expert Litwin disclosed his preliminary expert report to Crosby pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. Because there had been little discovery at that point, Litwin indicated that he anticipated supplementing the report as discovery proceeded. On April 30, 1997, Litwin submitted a supplemental report indicating that it was based, *inter alia*, upon deposition testimony, the OSHA report, and photos taken at the accident site shortly after the accident. In that report, Litwin noted that the injured men had not moved under the compressor during the hoisting process. The compressor had hit a cart as it was falling. Because the cart was not underneath the compressor when the lift began, the compressor could not have fallen straight down, hypothesized Litwin. Therefore, concluded Litwin, Rodney and Cook were not standing under the compressor during the lift. *Litwin* 4/30/97 at 8. Eyewitness testimony supports this conclusion. *Whitlock Depo.* at 20; *Stockdale Depo.* at 20 - 25. Litwin's April 30

7

report also noted that the absence of warnings about the backing out problem contributes to the defect. *Id. at* 5 - 6. Warnings are required to reduce the danger of future injuries, he opined. *Id.*

By order of May 23, 1997, the final supplements to all parties' expert reports were due on July 30, 1997. On the due date, Crosby received a letter from BGGC's attorney which began: "Please accept this as a supplementation to the opinion of Gene Litwin." *Crosby Motion to Preclude,* Exhibit B. The letter read:

> Mr. Litwin is expected to testify that based upon the testimony of the witnesses, that Mr. Cook did not move from his original position at the time that the lift was made, and that the compressor must have swung or rotated to have hit Mr. Cook and Mr. Vincent.

> In addition thereto, Mr. Litwin is expected to testify that adequate warnings would have prevented this type and kind of shackle from being used a [sic] "permanent application" on the compressor and that Crosby was aware of the potential problem, but failed to provide warnings with the shackle.

*Id.* This letter was signed by BGGC's attorney, rather than Litwin.

On the following day, after the supplementation due date had passed, Crosby received another letter from BGGC's counsel. This letter indicated that Litwin would use, as "part of his opinion," a videotape "previously disclosed" to Crosby, showing test lifts

8

performed at the construction site.  This letter was also signed
by intervenor's attorney, rather than Litwin.

Crosby moves to strike the proposed testimony outlined in
these letters.  Crosby argues that the letters are not "reports"
and were not written and signed by any expert, as required by
Rule 26(a)(2)(B).  In addition, the letters do not state "all of
the opinions to be expressed nor the basis or reason for these
opinions," Crosby argues.  *Crosby Motion to Preclude* at 2.
Moreover, the July 31 letter regarding use of the video tape was
not timely, maintains Crosby.  Finally, Crosby argues that Litwin
was not actually present for the making of these videotapes.
Because of these alleged deficiencies, Crosby maintains that it
has been prejudiced: presumably because this information was
revealed after Crosby deposed Litwin.[4]

In response, Vincents argue that most of the information in
the July letters had been addressed by Litwin previously, via
expert report or during his deposition.  The only information not
specifically addressed, "concerned the video tapes and pictures [5]

---

[4] In a separate motion challenging Vincents' evidence list, Crosby
objects to Vincents' use of the video tapes because it claims that Vincents
have not yet disclosed the tapes to Crosby.

[5] Neither the July 30 or July 31 letter mentions any test photographs.
Consequently, the court considers only the video tapes in this motion to admit
Litwin's testimony.

of 'test lifts,'" they maintain.  *BGGC's Response to Motion to
Preclude* at 2.  These items are, however, consistent with
Litwin's previously expressed opinions, Vincents claim.
Accordingly, Vincents were under no obligation to supplement
Litwin's report; Vincents only did so "out of an abundance of
caution."  *Id.*  Finally Vincents argue that they have
"substantially complied" with the signature requirements of Rule
26(a)(2)(B).  Along with their motion to admit Litwin's
testimony, Vincents cured the expert signature deficiency by
submitting copies of both the July 30 and July 31 letters signed
by Litwin.  *BGGC's Response to Motion to Preclude, Exhibits A &
B.*  Finally, Vincents remind this court that Crosby has requested
and received extensions in the past.

    This court first notes that Vincents' reminders regarding
continuances requested by Crosby and granted by this court are
weak and unsuccessful attempts to misdirect the court's
attention.  Defendant's compliance with the rules of procedure by
seeking additional time, <u>before</u> a due date, is not comparable to
the present situation where plaintiffs waited until after
Crosby's motion to strike to comply with the signature
requirement and seek this court's permission to supplement its

10

expert reports.[6]

## A. Rule 26(a)(2)(B)

Pursuant to Rule 26(a)(2)(B), a party who anticipates calling an expert to testify at trial, must first disclose to opposing counsel a report "prepared and signed by the witness." The report must contain:

1) "a complete statement of all opinions to be expressed,"

2) the "basis and reasons" for those opinions,

3) "the data or other information considered" when forming the expert's opinions,

4) "any exhibits to be used as a summary of or support for the opinions,"

5) the expert's qualifications,

6) the compensation to be paid the expert, and

7) a list of any other cases in which the witness has testified as an expert at trial or deposition within the proceeding four years.

F.R.Civ.P. 26(a)(2)(b). Of course, attorneys are not prohibited from assisting experts in preparing the reports. *Id. at* advisory committee's notes.

Expert reports must be "detailed," "complete," and disclosed

---

[6] As a fall back to Vincents' argument that the July letters are not actually supplements, Vincents request leave to supplement Litwin's proposed testimony with the July letters.

to opposing counsel according to the time schedule established by
the court or at least ninety (90) days before trial.  F.R.Civ.P.
26(a)(2)(B), 26(a)(2)(C), advisory committee's note.  The goal
behind Rule 26(a)(2) is to require disclosure far enough in
advance of trial that opposing counsel has time to prepare for
trial and, if necessary, depose the opposing witness and prepare
a rebuttal witness.  *Id. at* advisory committee's note.  Indeed,
Congress contemplated that expert reports would contain enough
detail that opposing counsel might not need to depose the expert
witness.  *Id.*

Supplementations to expert reports are governed by Rule
26(e)(1) which imposes a "duty to supplement or correct" the
report if a party "learns that in some <u>material</u> respect the
information disclosed is <u>incomplete or incorrect</u>...."  F.R.Civ.P.
26(e)(1).  This duty extends to both expert reports and
depositions given by experts.  *Id.*  However, this duty to
supplement is not implicated where "the additional or corrective
information has...otherwise been made known to the other parties
during the discovery process or in writing."  *Id.*

In the present case, the July 30 letter does comply with the
technical requirements of Rule 26(a)(2)(B).  It was timely, and
although it did not originally meet the signature requirement of

Rule 26(a)(2)(b), Vincents have subsequently cured that
deficiency.  Crosby's argument that the testimony proffered in
the July 30 letter should be stricken because the letter was not
signed or prepared by an expert is without merit.  As the
advisory committee notes make clear, an attorney may assist the
expert in preparing the report.  F.R.Civ.P. 26(a)(2)(B).
Indeed, there is nothing wrong with an attorney actually typing
the report.  *Marek v. Moore*, 171 F.R.D. 298, 302 (D. Kan. 1997).
What is essential is that the expert's opinion forms the basis of
the report and that the expert "expressly adopts" the report with
a signature.  *See id.*

Further, the first paragraph of the July 30 letter in no way
violates Rule 26 (a)(2)(B) or the supplementation requirements of
Rule 26(e)(1).  The first paragraph discusses Litwin's opinion
that Cook did not move from his original position while the
compressor was being lifted, but instead the compressor swung or
rotated before hitting Cook and Rodney.  This opinion is
completely consistent with Litwin's previously disclosed April
30, 1997 report which reads:

> 2. The situation was not, however, that as the compressor
> was lifted that they then moved in directly beneath the
> suspended load.

13

3. When the compressor fell it first struck a nearby welding
cart.  This demonstrates that the compressor did not fall
literally straight down since the compressor did not begin
the lift with the welding cart beneath it.

*Litwin 4/30/97* at 8.


Likewise, the portion of the second paragraph describing

Crosby's awareness of the shackle's alleged defect and its

failure to warn is consistent with Litwin's prior reports.  In

both the January and April reports, Litwin repeatedly opines that

the "inherent safety problem" was well known to Crosby as well as

other shackle manufacturers.  He also asserted that Crosby has

failed to place a warning about the alleged shackle defect in is

products catalog, its shipments of the screw pin shackle, and

directly on the product.  *Litwin 4/30/97* at 5 - 6.


Crosby's only valid complaint relates to the second half of

paragraph two where Litwin describes the ramifications of an

"adequate warning."  BGGC argues that this proposed opinion

evidence does not differ from opinions expressed by Litwin in his

reports or deposition testimony.  However, Vincents have failed

to meet their burden of proof on this issue.


First the opinion evidence regarding Crosby's failure to

warn, <u>materially</u> differs from the opinions expressed in Litwin's

previous reports.  *See* F.R.Civ.P. 26(e)(1).  In his April 30
report, Litwin opined that "[f]or those users who continue to use
screw pin anchor shackles, danger <u>can</u> be <u>reduced</u> if users
understand the danger involved.  Warnings directly on the shackle
would be far more likely to work."  *Litwin 4/30/97* at 6 (emphasis
added).  In the July 30 report, however, Litwin expresses the
opinion that "adequate warnings would have <u>prevented</u> this type
and kind of shackle from being used a [sic] 'permanent
application' on the compressor...."  (emphasis added).  This most
recent opinion is a more emphatic and specific statement
regarding the effect of an "adequate warning," and how such a
warning might have influenced customer behavior.  Shifting from
an opinion that an "adequate warning," might have "reduced" the
danger, to an opinion that an "adequate warning" would have
"eliminated" the danger constitutes a <u>material</u> alteration of
Litwin's prior opinion testimony.

BGGC also fails to meet its burden on its assertion that the
July 30 opinions are consistent with Litwin's deposition
testimony.  At no point does BGGC direct this court to <u>any</u>
<u>portion</u> of Litwin's deposition testimony to support its claim.
Finally, it is revealing that Vincents begin the July 30 letter
by describing it as a "supplement."

15

Of course, this new July 30 opinion evidence was disclosed in a timely manner. Thus, timing is not the problem. Instead, BGGC violates Rule 26(a)(2)(B) by failing to provide the "bas[es] and reasons," underlying Litwin's failure to warn opinions. *See* F.R.Civ.P. 26(a)(2)(B). In addition, Litwin does not disclose the "data or other information considered by" him in forming his failure to warn opinions, as required by Rule 26(a)(2)(B).

Because of these deficiencies, this court holds that the portion of the July 30 letter regarding "adequate warnings" fails to meet the requirements of Rules 26(a)(2)(B) and 26(e)(1), such that defendant may have been prejudiced during its deposition of Litwin. Likewise, the July 31 letter also violates Rules 26(a)(2)(B) and 26(e)(1). It was not submitted in accordance with this court's scheduling order and was therefore untimely. Consequently, Crosby was forced to depose Litwin prior to Vincents' revelation that Litwin planned to rely on a "test lift" video tape to support his testimony.

## B. Rule 37(c)(1) Sanctions

Sanctions are appropriate where a party submits evidence that does not comply with the expert report requirements of Rule 26(a)(2)(B) and the supplementation requirements of Rule 26(e)(1). Crosby asks this court to exclude the proffered

16

testimony.  However, exclusion is a drastic remedy which should only be imposed under dire circumstances.  *Asia Strategic Investment Alliances, Ltd. v. General Electric Capital Services, Inc.*, No. 95-2479-GTV, 1997 WL 122568, at *6 (D. Kan. 1997); *McNerney v. Archer Daniels Midland Co.,* 164 F.R.D. 584, 587 (W.D.N.Y 1995).  Indeed, the Federal Rules provide that exclusion is only appropriate when a two part test is met: where there is no substantial justification for the non-compliance <u>and</u> where non-compliance is harmful to the opposing party's ability to prepare for trial.  F.R.Civ.P. Rule 37(c)(1).  Non-compliance is harmful to the opposing party where the proffered expert testimony is disclosed during trial or so close to trial that the opposing party will not have sufficient time to depose the witness and/or prepare a rebuttal witness.  *Asia Strategic,* 1997 WL 122568, at *6.  *See Alimenta, Inc. v. Anheuser-Busch Companies, Inc.*, 803 F.2d 1160, 1163 (11th Cir. 1986) (listing the factors a court should consider when analyzing a motion to preclude).  Where this two part test is not met other less drastic sanctions are permissible.  *Id.*

Here Vincents' only argument in support of their motion to include is that both letters fail to constitute a material change from previously disclosed evidence.  However, this court finds to the contrary.  Moreover, Vincents never even attempt to explain

17

to this court why Litwin's July reports did not provide the bases
and reasons for his opinions as required under Rule 23(a)(2)(B).
Consequently, Vincents have offered no "substantial
justification" for having violated the expert report submission
and supplementation rules.

Crosby bears the burden of proving the next element if the
Rule 37(c)(1) test: prejudice.  Crosby asserts that the evidence
in question is "vague, ambiguous [and] void of any basis or
reason."  *Crosby Motion to Preclude* at 2.  Such an assertion is
similarly vague and ambiguous.  Consequently, it does not satisfy
Crosby's burden of proof on the issue of prejudice.  This court
has not yet set a trial date in the present case and there is
ample time for Vincents to cure the deficiencies in the July
letters.  *Asia Strategic,* 1997 WL 122568, at *6 (noting that
preclusion of the proffered evidence is generally not warranted
unless the disclosure occurred during, or very close to, trial).
*See Alimenta,* 803 F.2d at 1163.

Accordingly, this court shall permit further discovery on:
1) Litwin's failure to warn opinion evidence found in the July 30
letter, and 2) Litwin's use of the test lift video tapes as a
basis for his expert testimony.  Vincents must submit a report
which fully complies with the requirements of Rule 26(a) within

thirty days of this opinion and order.[7]  Specifically, the report
should be "detailed," "complete," and indicate the "basis and
reasons" underlying Litwin's proposed testimony, as well as any
"data or other information considered" by Litwin in forming his
opinions.  *See* F.R.Civ.P. 26(a)(2)(B).  In addition, if Crosby so
chooses it will be allowed to depose Litwin again, within thirty
days after Litwin's supplemental disclosures.  Costs for an
additional deposition shall be taxed to BGGC, who hired Litwin.

### III. Motion for Summary Judgment

#### A. *Daubert* Claims.

At an August 13, 1977 status conference, this court invited
the parties to comment on the applicability of *Daubert* and of
this court's opinion in *Sheperd v. Michelin*, No.92-AR-0089-S
(July 25, 1997) to the failure to warn evidence proffered by
BGGC's expert.  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579, 113  S. Ct. 2786 (1993).   It has been over one
month since the court encouraged the parties to comment on this
issue but no response from any of the parties has been received.
Accordingly, Litwin's failure to warn testimony is deemed to have
passed the *Daubert* test.

---

[7] Additionally, within thirty days of this opinion and order, Vincents
must disclose to Crosby a copy of the "test lift" video tapes.

**B. Motion to Strike**

A portion of the evidence BGGC submitted in opposition to Crosby's motion for summary judgment, is based upon the affidavits of witnesses Alfred W. Whitlock ("Whitlock"), a former BGGC employee, and two current employees: Roland Stockdale and John Rickles.  Crosby has moved to strike these affidavits arguing that the affidavit testimony contradicts the testimony given by the witnesses during the deposition.  Crosby also argues that portions of the affidavits are not based on personal knowledge and therefore are not admissible under Rule 56(e).

After carefully reviewing the record, the court finds there is ample evidence in the record to create a genuine issue of material fact, without reliance on the affirmations in the challenged documents.  Any possible contradictions can, of course, be explored and exploited at trial.  Therefore Crosby's motion to strike these affidavits is moot for purposes of summary judgment.

**C. Summary Judgment Standard**

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,

20

> show that there is no genuine issue as to any material
> fact and that the moving party is entitled to a
> judgment as a matter of law.

F.R.Civ.P. 56(c).  The Eleventh Circuit stated the obvious when
it observed that "[s]ummary judgment is appropriate where there
exists no genuine issue of material fact and the movant is
entitled to judgment as a mater of law."  *Turnes v. AmSouth Bank,
N.A.,* 36 F.3d 1057, 1061 (11th Cir. 1994).

## D. Analysis

Crosby makes three arguments in support of its motion for
summary judgment.  First Crosby argues that Vincents cannot make
out a prima facie case under the AEMLD because they cannot prove
that a Crosby shackle was involved in the accident and thus they
cannot show proximate cause.  Additionally, Crosby argues that
Vincents cannot show proximate cause on their failure to warn
claim because they cannot prove that additional or different
warnings would have prevented the accident.  Finally, Crosby
argues that Rodney was contributorily negligent and/or assumed
the risk of injury.  Consequently Vincents are barred, as a
matter of law, from recovering, Crosby maintains.

While product identification is a "threshold requirement" in
a products lability case, Vincents may meet their burden through
"circumstantial as well as direct evidence."  *Strickland v. Royal*

21

*Lubricant Co., Inc.*, 911 F. Supp. 1460, 1470 (M.D. Ala. 1995)
(citing *Sheffield v. Owens-Corning Fiberglass Corp.*, 595 So.2d
443, 450 (Ala. 1992)).  Vincents have produced more than enough
circumstantial evidence to create a genuine issue of material
fact regarding the presence of a Crosby shackle on the compressor
during the fatal lift.  The construction site superintendent
testified that he believed only Crosby shackles were used on the
site.  The day before the accident another BGGC employee
remembers seeing a shackle, that was at least partly gray, on the
compressor and the investigative team found a silver Crosby
shackle after the accident, unattached to any machinery and
missing a screw pin.  They also found a red screw pin in the
compressor, which they were able to screw into the unattached
shackle.  No other screwless shackles were found near the
accident scene and it was company policy that shackles remain
permanently attached to compressors.   This evidence is certainly
enough to create an inference that a Crosby screw shackle was on
the compressor during the lift.  Consequently, Crosby is not
entitled to summary judgment on its lack of product
identification proximate cause defense.

Likewise, Crosby's proximate cause argument regarding the
failure to warn claim is without merit.  Crosby argues that

Vincents' failure to warn claim should not survive summary judgment because Vincents did not offer "substantial evidence that a <u>different</u> warning would have been read and heeded and would have prevented the accident and/or resulting injuries from occurring." *Crosby Brief* at 22 (emphasis added).

However Mike Casey, BGGC's safety director, affirms that he would have required a different shackle as a permanent attachment on air compressors, if he had known of the alleged defect in the Crosby screw shackle. *Casey Affidavit*. Moreover, there is expert testimony, by Litwin, that warnings would have prevented the screw pin shackle from being used as a permanent attachment. Consequently, there is sufficient evidence upon which a jury might determine that a warning would have prevented the accident in question.

In addition, "a plaintiff who does not read an allegedly inadequate warning cannot maintain a negligent-failure-to-adequately-warn action <u>unless the nature of the alleged inadequacy is such that it prevents him from reading it</u>." *Clarke Industries, Inc. v. Home Indemnity Co.*, 591 So.2d 458, 461 (Ala. 1991). *See, Carruth v. Pittway Corp.*, 643 So.2d 1340, 1345 (Ala. 1994) (citations omitted); *Precise Engineering, Inc. v. LaCombe*, 624 So.2d 1339, 1344 - 41 (Ala. 1993). In the present case,

Litwin claims, and Crosby does not contradict, that there are no warnings provided to potential screw pin shackle purchasers, users or dealers. Logically, an absent warning prevents the user from reading and appreciating the potential danger, thereby allowing a plaintiff to maintain a claim for negligent failure to warn. Therefore, summary judgment for Crosby is not appropriate on Vincents' failure to warn claim.

Crosby's third and last argument, that Rodney was contributorily negligent and/or assumed the risk of injury, is likewise inappropriate for disposition on summary judgment. In order to prove contributory negligence as a matter of law, Crosby must show that Rodney "specifically appreciated the risk of harm of death at the time of the accident." *Hicks v. Commercial Union Insurance Co.,* 652 So.2d 211, 220 (Ala. 1994) (emphasis added). "A plaintiff's mere inadvertence or carelessness in causing an accident should not be available as an affirmative defense to an AEMLD action," *Dennis v. American Honda Motor Co., Inc.*, 585 So.2d 1336, 1339 (Ala. 1991), unless "a contributing proximate cause of the accident was the plaintiff's failure to use reasonable care in using the product." *Campbell v. Cutler Hammer, Inc.*, 646 So.2d 573, 574 (Ala. 1994) (emphasis added).

This court is unwilling to hold, as a matter of law, that

24

Rodney "<u>specifically</u> appreciated the risk" that the shackle might
malfunction and therefore he failed to use reasonable care in
preparation for the lift.  While his actions my have been
imprudent, there are genuine issues of material fact regarding
whether his conduct rose to the level of contributory negligence.
Rodney had visually inspected the shackle the day before the
accident, after which the compressor was moved without incident.
On the day of the accident, he attached the compressor to the
crane, then manually checked the attachment by pulling on the
apparatus.  *Stockdale Depo.* at 15 - 16.  Other employees have
testified that they generally make a visual inspection of the
shackle, but not on every occasion, *Stockdale Depo.* at 35; *Bender
Depo.* at 14 - 15, and Vincents' expert testified that a visual
inspection may not reveal that the screw pin is not secured.
*McCarthy Depo.* at 76.  Further, there is no evidence that Rodney
was aware of: 1) the alleged "backing out problem, or 2) any
previous accidents involving the Crosby shackle.  *See Hicks,* 652
So.2d at 220 (considering the absence of accidents, during the
past decade, as a factor in determining whether plaintiff was
contributorily negligent in an AEMLD case).  Finally, there is no
evidence that Rodney stood directly under the compressor during
the lift.  Given these facts, a jury might find that Rodney was
careless, but not contributorily negligent.  *See Charpie v. Lowes
Home Centers, Inc.,* 930 F. Supp. 1498, 1502 (M.D. Ala. 1996)

(noting that contributory negligence is generally an issue for
the jury) (citation omitted).

    To obtain summary judgment on the issue of assumption of
risk, Crosby must show that Rodney "discover[ed] the defect and
[was] aware of the danger, [but] nevertheless procee[ed]
unreasonably to make use of the product...." *Hicks*, 652 So.2d at
220 (citations omitted). Yet there is no evidence, in the
present case, that Rodney was aware of the possibility that the
screw pin might become loosened after a single lift. Moreover,
assumption of risk is generally a question of fact, reserved for
the jury. *Id.* Therefore, Crosby is not entitled to summary
judgment on its contributory negligence or assumption of risk
defenses.


### IV. Conclusion


    Crosby's motion to preclude Litwin's July expert testimony
and for summary judgment should be denied. Conversely, Vincents'
motion for leave to supplement Litwin's expert reports, should be
granted, consistent with the accompanying order. Finally,
Crosby's motion to strike the affidavits of Whitlock, Stockdale
and Rickles, is moot for purposes of summary judgment.

DONE this $\underline{14}^{\text{th}}$ day of October, 1997.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

27